May it please the Court, my name is Wayne Young. I represent the appellant Hantzis. This is a Sixth Amendment Feretta case. Our principal argument is that this court failed at five separate proceedings to comply with the requirements of Feretta. The burden is on the government to establish the validity of the waiver of the right to counsel, and this court should indulge every reasonable presumption against waiver. Mr. Young, I have a quick question. Was there any problem, counsel? Judge Gould with a question. Was there any problem with the initial Feretta colloquy? Yes, Your Honor, there was. That was the hearing on November 22nd, 2004. The first problem, before we even get to Feretta, is that the court violated Hantzis' right to counsel by proceeding in the absence of his counsel, who failed to appear. Here's a day on which a client gives up his right to counsel, and he's not even assisted by his retained counsel. But on the Feretta issue, in order to demonstrate a knowing and intelligent waiver, you have to inform the client of three things, Judge Gould. The nature of the charges against him, the possible penalties, number two, and three, the disadvantages of self-representation. In that initial Feretta inquiry, there was no discussion of possible penalties. And as to the dangers of self-representation, the court simply told Hantzis, look, there are hazards to representing yourself. There are important issues here. But this court in the United States v. Hayes at 231, Fed 3rd, 1132, said that merely suggesting that the consequences of self-representation in the abstract is not enough. You have to instruct the defendant that, for instance, the United States is represented by experienced counsel. You have to abide by all the rules. There's questions that need to be asked to sufficiently warn him. So those two things, Judge Gould, in the initial Feretta hearing, the failure to discuss the possible penalties and the failure to discuss at any length the disadvantages of self-representation, made that hearing flawed. The next day they come back, November 23rd. And counsel's there, and Mr. Hantzis isn't. So here Mr. Hantzis, as of yesterday, is authorized to proceed pro se, and that right is rescinded without him even being present when his attorney shows up to court and says, oh, I spoke with Mr. Hantzis. He misspoke. He really wants me to represent him. And counsel has represented him, is now back as counsel. A decision made in the absence of Mr. Feretta. And then on January the 4th, 2005, this is our ---- In the absence of Mr. Feretta, you mean? Mr. Hantzis. I'm sorry. But what I'm troubled by, where is Mr. Hantzis at this point? He's in the courtroom. No, he's not there on the 23rd of November. My understanding is that the next day, Judge Wilson had issued a arrest warrant for counsel for failure to appear on the 22nd. Counsel shows up the next day and says, in the absence of Mr. Hantzis, says, he misspoke. He really wants me to represent him, and counsel is reinstated. So Feretta is violated in that sense, is that your right to self-representation was withdrawn in the absence of his presence or a chance to be heard. Is it your position, Mr. Young, that in effect a new Feretta hearing has to occur every time a possible change, well, every time there's a possibility of self-representation? Not every time, Your Honor. If you show up for a garden variety status conference, certainly not. Maybe even for an argument on an issue. Do you have any authority for the concept that you have to have more than one Feretta hearing in a proceeding? Yes, Your Honor. In the Arnold v. United States case, it's a 1969 Ninth Circuit case, and these were mentioned in the Rule 28J letter. That's 414 Fed Second, 1056. Yeah, 1056, I'm sorry. The usual rule is that the Feretta waiver goes forward unless there's a change in circumstances or unless counsel says he wants representation. And several other circuits have adopted that. For instance, McBride in the Sixth Circuit. And the standard is, Judge Smith, a change in circumstances or intervening events that would suggest to the district court, you better warn this fellow once again about the dangers of self-representation. And that happened here on the drug testing evidentiary hearing. Judge Wilson ordered an evidentiary hearing. Now, that becomes more like a trial in that you have to cross-examine a witness, in this case a drug expert for the government, and you have to comply with the rules of evidence. So if a defendant is going to come in and have an evidentiary hearing, which is rarely granted post-trial, there's some duty on the judge to recognize that and once again. What does the judge have to say on the record in order to meet the standard as you view it? I think another Feretta warning, and again, this is post-trial. It doesn't have to be as thorough as the initial one prior to trial. But, Mr. Hansen, you are, we're granting you an evidentiary hearing on the issue of the drug quantity and the drug quality. There's going to be an expert witness testifying. You're going to have to cross-examine him, comply with the rules of evidence. The government is represented by experienced counsel. Representing yourself under those circumstances is probably not a good idea. And it's your position that that occurs even post-trial? It does, Your Honor, if there's a significant change in circumstances. Okay, now, here you're talking about the sentencing portion of this. I'm just trying to see how far your rule goes out. I mean, it seems to me you could, I've seen a few cases like the Thompson case before Judge Collins where the guys kept going back and forth, back and forth, back and forth. You know, wants counsel, doesn't want counsel. I think it was like ten times. I just wonder where this ends under your scenario. It seems like it's almost a gotcha arrangement for the district judge. Because the district judge can have a perfectly fulsome colloquy with the defendant, go through everything possible. And you still wouldn't be satisfied because if there's a change of circumstances in a post-trial world, you still think another Feretta hearing is required. Well, first, Your Honor, we don't agree that there was a thorough Feretta hearing. No, I understand. But assuming there was. Assuming there was, the change of circumstances at sentencing was that Booker had been decided in the interim. There's a pre-sentence report that's three years old. There's only a sentencing memo pro se by the defendant that's two years old. And Booker gets decided, which, as the Court knows, increased the discretion of the district court significantly to sentence below the guidelines. Now, the mandatory minimum was 120 months. So without even going to the mandatory minimum, Judge Wilson could have, pursuant to Booker, sentenced him as low as 120 months. There was a recommendation from the probation of 151 months, recommendation from the government of 235 months. So there's enormous discretion here. So the intervening circumstance is Booker plus Mr. Hansen's requested counsel at sentencing. So that's the second factor. He, right at the beginning when he was given the right to speak, he said, Judge, this is too much for me. I can't go through with sentencing. I'd like assistance of counsel. So even apart from whether – How many attorneys did Mr. Hansen have from the beginning of this? I think four or five, Your Honor. He had one counsel who represented him all the way through trial, two or three counsel who were all removed, and then the original trial counsel was the one who represented him and was finally removed. Are we to make anything of this? I don't think so, Your Honor, because that is the situation that Judge Smith posited. Had there been, with those prior counsels, thorough, thorough waivings, when – you know, then perhaps. But these were just one-of-the-mill substitutions by Mr. Hansen as he went along. I wouldn't say five attorneys in a criminal case is one-of-the-mill. It's unusual, but it certainly happens. And the last point I'd like to make is at the hearing in which Mr. Hansen was unequivocally allowed to go pro se, that was the hearing on January 4th, 2005, Mr. trial counsel was relieved and never appeared again. Mr. Hansen went pro se the rest of the way. There were no Faretta warnings. So here is the time in which he's unequivocally removed his counsel and no Faretta warnings took place at all at that hearing. And with no further questions, I'll submit. Thank you. We'll hear from the government. Thank you. May it please the Court, Tedden Lally on behalf of the United States. The Court should affirm the defendant's convictions and his sentence. And because the only issue raised here today by the defense is the Faretta issue, the government will focus its arguments respectively. The issue before this Court is whether at the specific stage in the proceedings, that is, post-trial, pre-sentencing, the district court conducted a constitutionally sufficient Faretta colloquy. It did. In fact, the government would submit that when the record is reviewed as a whole, it's hard to conceive of another defendant who has been so voluntarily behind proceeding pro se in a particular case. So is there any authority or proposition that it's significant that it's post-trial as opposed to pre-conviction? Yes, Your Honor. There are several, both the Tovar case by the Supreme Court, this Court's decision in Lopez, which state that you have to look at the particular stage of the proceedings at which the colloquy occurs, and that in the non-trial context, the comprehensiveness, the exhaustiveness of the colloquy need not be as exact. And with respect to this particular defendant, as I was indicating, from the time of his conviction going forward, he showed nothing but absolute contempt for the four. There were four separate attorneys who represented him post-trial, pre-sentencing, and their work. Counsel, the defense counsel suggests that the Arnold v. United States case that he cited, I imagine you heard his reference, is authority for the proposition that a change of circumstances is sufficient to trigger a new forensic hearing. What's the government's position about that? Well, Your Honor, Arnold does say that, but Arnold also says in the sentences preceding that particular statement that a competent election by the defendant to represent himself and to decline the assistance of counsel once made before the court carries forward through all further proceedings in that case. It then goes on to say, unless the appointment of counsel for subsequent proceedings is expressly requested by the defendant or there are circumstances which suggest that the waiver was limited. The waiver in this case wasn't limited. So you're suggesting that in this case, Hansen's did not meet the requirements for an Arnold v. hearing, if you will, a new Faretta hearing. That is the government's position, Your Honor. And there were two issues specifically cited by defense counsel. One, the request for counsel at the defendant's sentencing. With respect to that request, the government addressed this in its briefing, but this was an instance where he wasn't requesting assistance with sentencing. He was requesting assistance of counsel so that he could file a new slew of briefs, because he claimed that he hadn't been effectively represented by all the four prior counsel, as well as presumably himself up to this point. But he was looking to attack the case on the merits, not looking for the assistance of counsel at sentencing. So that the particular hearing that Mr. Young referred to, he was trying to press an IAC claim based upon the trial itself as opposed to getting help with regard to sentencing? At the sentencing, when he showed up for the sentencing hearing and he told the court that he couldn't proceed with sentencing, he was talking to the court about a series of substantive challenges that he wanted to make to the underlying conviction, as well as the indictment, the jurisdiction of the court, and a series of other claims that he had been making. Okay. Other than the trial-related assistance that he wanted, did he say he wanted counsel specifically for sentencing and why he did? No, he didn't, Your Honor. And with respect to that, there's a history here. You can't take the one proceeding away from the history of the case and from everything that had preceded it. And this was a case that took years. It took almost four years to get the sentencing. This was a defendant that had engaged in delay at every possible instance in order to prevent the sentencing from occurring so that he could continue to file new motions with the court. And that was what occurred in this instance. With respect to Booker, the government was submitted to counsel. Counsel, Judge, if I could pose a question. I understood defense counsel to also challenge the initial colloquy and to say it was inadequate in not warning of penalties adequately or at all, to mention penalties, and that it was inadequate in its degree of discussion of risk. Could you address the initial colloquy? Yes, Your Honor. First of all, the government would submit that there was only one colloquy, and it will explain why in one minute. But with respect to that initial colloquy, the one colloquy, the government would submit that it was deficient. This was a colloquy for purposes of proceeding towards sentencing. The Lopez Court or this Court in Lopez specifically said that in that instance, you need to only tailor the colloquy to account for the nature of the proceedings, in this case the sentencing, and also for the consequences that may flow as a result of that proceeding. That's precisely what the district court did here. The colloquy is actually more extensive than the defense indicated. In the colloquy, the district court initially asked the defendant whether or not he knew the hazards of representation. The defendant said he did, but that wasn't just a hollow response. This was a defendant who the record demonstrates had followed pro se motion after pro se motion, all of which had met with no success. The district court then proceeded to go on further, explain to the defendant he wasn't a lawyer, he wasn't first in the law, that going forward there actually were two proceedings that were contemplated. And both of these proceedings were very much a part of this Feretta colloquy. The court advised the defendant that there would be proceedings that could impact the — whether or not his convictions stood, which would be the new trial motion and the other pro se motions that he filed, as well as the sentence he might receive, and that he could be penalized significantly for proceeding pro se and without the assistance of counsel. The court then, with the defendant's assistance and with the defendant joining in, asked the defendant a series of questions relating to his new trial motion. There was a discussion about a grand jury question. There was a discussion with the defense about the new trial motion, the defendant's belief that the government's drug experts had perjured themselves, and the court's explanation to the defendant that there would be an evidentiary hearing, that the government's expert and the defense experts would be present at that hearing, and that the defendant would be available to testify or, excuse me, to elicit testimony and cross-examine those witnesses. That was in the colloquy. They then went further, and the court and the defendant again discussed the fact of sentencing and the defendant's belief that he had provided, quote, mega cooperation, and the government's belief that that wouldn't be an issue at sentencing because he had not successfully cooperated. Underlying all this is the fact that with respect to the motion for new trial, every issue that was before the court was an issue that the defendant himself had put there. He had put them there through his own pro se motions and was well aware of what those were and was able to argue. Same thing for the sentencing. The defendant had two sentencing memorandums filed in this case, one by an attorney which caused that attorney to get promptly fired by the defendant, which was the only substantive memorandum filed by an attorney on the defendant's behalf in the years subsequent from his conviction to sentencing. All other filings were done by the defendant, and the defendant's own sentencing memorandum. And in that sentencing memorandum, the defendant took by turn and addressed every single one of the issues that ultimately proved to be significant at sentencing, relating to acceptance of responsibility, the government's belief that an obstruction enhancement should apply, the questions relating to the drug experts, whether or not the defendant would receive cooperation, whether or not the safety valve benefits would extend to the defendant. Those were all addressed in the defendant's sentencing memorandum. He had filed these prior to the time that he had this colloquy and was versed in it. So that was sort of the undercurrent of what existed when you look at the record as a whole. And after all of that had been done, the court then said to the defendant that it would appoint a public defender for him if he only asked for it. And the defendant insisted that, no, it was his intent to proceed pro se. The government would submit that in that instance, certainly with respect to the dangers and disadvantages of proceeding as to the new trial motion, going forward to the new trial motion, and also proceeding forward to sentencing, the district court had certainly explained the dangers and disadvantages. Now, as to the issue of did he explain all the exact penalties that the defendant could face at sentencing, at that particular hearing, he did not. But this Court has said that it's permissible to look at the entire record in order to assess whether or not the defendant had the requisite knowledge. And in this case, the entire record shows that he had. He had been arraigned on the indictment. He had been provided with multiple plea offers which set forth the potential penalties, as well as the factual basis that the government sought to prove, and the defendant had denied both of those. He had received the PSR which set forth the various sentencing, his sentencing exposure, his calculation of sentencing range, his acknowledgement that that sentencing range could increase should the government succeed on its obstruction enhancement, and its belief that the defendant wasn't entitled to other reductions in sentencing. And so the defendant had all that information. As the record in its totality demonstrates, the Freda colloquy was sufficient. Now, as to the subsequent proceedings, the proceeding the following day was not a hearing in this matter. This was an attorney who had a bench warrant issued for him and came to the Court to clear that warrant. That was the sole purpose of that hearing. He was obviously in a difficult situation, and at that hearing, he made a misrepresentation to the Court as to the defendant's status and whether or not he was still counsel. The defendant cleared this up. Within approximately two weeks of that proceeding, the defendant filed a motion with the Court where the defendant made clear that it was his intent to proceed pro se. And at the January proceeding — Was there any finding made that the attorney made a misrepresentation? Not as to that — no, not as to that issue. But the defendant — the defendant wasn't present because, again, it wasn't during this case. But when the defendant learned of what occurred, he very shortly thereafter filed a motion saying, I'm pro se. And nothing happened at this proceeding with the attorney that affected the case? Nothing. And, in fact, nothing — that particular attorney, I believe, and I'm quite confident, didn't file any materials in this case at any time post-trial. Very well. Anything further? I have one quick question, if I may. On ER-43, the Court says, now, we've got to bring this to a close. Three years of motions without sentences is almost unprecedented. Now, in that period of time, was the defendant — did he ever file any motions in which he acknowledged the existence of Booker? Or did the government ever file any documents that acknowledged the existence of Booker? The government did file a sentencing memorandum not prior to that hearing. And I believe Booker — I'd have to look at the exact date. I believe Booker came after. Afterward. After the hearing. Okay. The government sentencing memorandum did address it. The Court, at sentencing, acknowledged its Booker discretion. But this wasn't a Booker case. This was a case where the defendant had committed just incredible perjury of the same through a series of outlandish allegations and declarations that were presented to the Court. To the extent that there was going to be a Booker variance, it was going to be an upward variance, and one that would result in a more significant penalty. And, in fact, at sentencing, the district court imposed what was, for the corrected guideline range to account for the obstruction enhancement, a mid-level sentence, in part because of the defendant's past conduct in the case. Thank you. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Gould, M Smth